UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DARRIN LAPINE,

        Plaintiff,

v.

RANDEE REWERTS, *et al.*,

        Defendants.

_____/

Case No. 1:18-cv-1447

Hon. Gordon J. Quist

### REPORT AND RECOMMENDATION

This is a *pro se* civil rights action brought pursuant to 42 U.S.C. § 1983 by plaintiff Darrin LaPine, a state prisoner at a Michigan Department of Corrections (MDOC) facility. This matter is now before the Court on motions for summary judgment based on failure to exhaust filed by defendants Sperling (ECF No. 26) and Bean (ECF No. 37).

**I.     Background**

Plaintiff's complaint involves incidents which occurred at the Carson City Correctional Facility (DRF). The Court previously summarized plaintiff's Eighth Amendment claims as follows:

> Plaintiff identifies two medical needs to which the Defendants were deliberately indifferent. Defendants McIntyre and Sperling insisted on providing Cymbalta to Plaintiff despite the fact that it was ineffective in treating Plaintiff's pain and caused adverse side effects. Defendants Sperling, Smith, Nelson, Verschure, Braman, Unknown Transportation Corrections Officer, Peeters, Loganathan, Bean, Stephan, and Sparks were deliberately indifferent to the serious medical need related to Plaintiff's right wrist.
>
> On December 11, 2018, Plaintiff's wrist slammed into a door frame. Plaintiff heard a crack and felt immediate and severe pain. His hand and wrist

1

swelled to twice their normal size. Plaintiff showed his wrist to Corrections Officer Smith, Nurse Nelson, and Nurse Verschure. He was instructed to wait in the waiting area. Eventually Smith told Plaintiff to prepare a kite so he could receive treatment. Plaintiff said he could not. He was told to go back to his unit.

Once in his unit, Plaintiff was told to report to the control center for an offsite medical appointment. He was told he would see a back surgeon. Before Plaintiff left, Defendant Sperling looked at Plaintiff's wrist, acknowledged it looked broken, but offered no treatment. Plaintiff complained to the transporting officers, Braman and the unknown officer, about his wrist, particularly because the handcuffs were causing Plaintiff pain. The transportation officers said they did not work in medical.

Plaintiff was transported to Henry Ford Allegiance Hospital, the neurosurgery department. Plaintiff was examined by Physician Assistant Peeters and Doctor Loganathan. Both acknowledged that Plaintiff's wrist required immediate attention. Neither provided any treatment. When Plaintiff raised the issue with the transportation officers again, they replied that they only provided transport, not medical treatment.

Upon Plaintiff's return to DRF, he was examined by Nurse Bean. She refused to provide any treatment. The next day, Plaintiff told Defendant Fidler and Defendant Psychologist Stephan about his wrist. Psychologist Stephan indicated that she would make sure Plaintiff received medical attention. A medical appointment for Plaintiff's hand was scheduled on December 14. Defendant Nurse Sparks cancelled that appointment.

On December 17, Plaintiff was seen by Dr. Holmes. Dr. Holmes ordered x-rays. Nurse Verschure ordered ace wraps and a splint. The x-rays were taken on December 18. Nonetheless, Defendant Sperling cancelled Plaintiff's appointment. On December 19, Plaintiff was seen for his wrist pain as an emergency patient.

Opinion (ECF No. 10, PageID.108-110).

The Court dismissed most of plaintiff's claims on initial screening.[1]  *See id.* at PageID.116; Order (ECF No. 11) (dismissing defendants Rewerts, Freed, Rohrig, Becher, and

---

[1] In screening the complaint, the Court observed that "[p]laintiff has filed many lawsuits in this district," and that while he is subject to the three-strikes rule for filing complaints that were frivolous, malicious, or failed to state claim, he suffers from chronic health problems with his back and right wrist, and "[i]n several lawsuits, including this one, Plaintiff has offered one or both of those problems as the source of imminent danger of serious physical injury that permits him to proceed *in forma pauperis* despite his three strikes."  Opinion (ECF No. 10, PageID.106).

Loomis); Opinion (ECF No. 12, PageID.129); Order (ECF No. 13) (dismissing defendants McIntyre, Smith, Nelson, Verschure, Braman, Unknown Party, Peeters, Loganathan, Fidler, Stephan and Sparks, and plaintiff's claim regarding his prescription for Cymbalta).  Plaintiff's only remaining claim is that DRF Physician Assistant Kyle Sperling and DRF Registered Nurse Jeanne Bean violated his Eighth Amendment rights when they failed to treat his wrist injury in December 2018. Opinion (ECF No. 12, PageID.129).

## II. Defendants' motions for summary judgment

### A. Legal standard for summary judgment

Defendants seek summary judgment on the ground that plaintiff failed to exhaust his administrative remedies prior to filing this lawsuit.  "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  Rule 56 further provides that a party asserting that a fact cannot be or is genuinely disputed must support the assertion by:

> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
>
> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1).

In *Copeland v. Machulis*, 57 F.3d 476 (6th Cir. 1995), the court set forth the parties' burden of proof in a motion for summary judgment:

> The moving party bears the initial burden of establishing an absence of evidence to support the nonmoving party's case.  Once the moving party has met its burden of production, the nonmoving party cannot rest on its pleadings, but must present

3

> significant probative evidence in support of the complaint to defeat the motion for summary judgment. The mere existence of a scintilla of evidence to support plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff.

*Copeland*, 57 F.3d at 478-79 (citations omitted). "In deciding a motion for summary judgment, the court views the factual evidence and draws all reasonable inferences in favor of the nonmoving party." *McLean v. 988011 Ontario Ltd.*, 224 F.3d 797, 800 (6th Cir. 2000).

### B.    Failure to Exhaust

#### 1.    Exhaustion requirement

The PLRA provides that a prisoner bringing an action with respect to prison conditions under 42 U.S.C. § 1983 must first exhaust available administrative remedies. *See Porter v. Nussle*, 534 U.S. 516 (2002); *Booth v. Churner*, 532 U.S. 731 (2001). A prisoner must exhaust available administrative remedies, even if the prisoner may not be able to obtain the specific type of relief he seeks in the state administrative process. *See Porter*, 534 U.S. at 520; *Booth*, 532 U.S. at 741. One reason for creating prisoner grievance procedures under the PLRA was to create an administrative record for the court.

> Requiring exhaustion allows prison officials an opportunity to resolve disputes concerning the exercise of their responsibilities before being haled into court. This has the potential to reduce the number of inmate suits, and also to improve the quality of suits that are filed by producing a useful administrative record.

*Jones v. Bock*, 549 U.S. 199, 204 (2007). In order to properly exhaust administrative remedies, prisoners must complete the administrative review process in accordance with the deadlines and other applicable procedural rules. *Id.* at 218; *Woodford v. Ngo*, 548 U.S. 81, 90-91 (2006). "Compliance with prison grievance procedures, therefore, is all that is required by the PLRA to 'properly exhaust.'" *Jones*, 549 U.S. at 218.

4

### 2. MDOC Grievance process

The MDOC requires prisoners to follow a three-step process to exhaust grievances. *See* Policy Directive 03.02.130 (effective July 9, 2007). A prisoner must first attempt to resolve a problem with the staff member within two business days of becoming aware of the grievable issue, unless prevented by circumstances beyond his or her control. *Id.* at ¶ P. If the issue is not resolved, then the grievant may file a Step I grievance on the prescribed form within five business days after the grievant attempted to resolve the issue with appropriate staff. *Id.* at ¶¶ P and R. The Policy Directive provides the following directions for completing grievance forms:

> The issues should be stated briefly but concisely. Information provided is to be limited to the facts involving the issue being grieved (i.e., who, what, when, where, why, how). Dates, times, places and names of all those involved in the issue being grieved are to be included.

*Id.* at ¶ R (emphasis in original). The prisoner must send the Step I grievance to the appropriate grievance coordinator. *Id.* at ¶ V. If the prisoner is dissatisfied with the Step I response, or does not receive a timely response, he must request the appropriate form and send it to the Step II Grievance Coordinator. *Id.* at ¶ BB. Finally, if a prisoner is dissatisfied with the Step II response, or does not receive a timely response, he must send a completed Step III grievance, using the appropriate form, to the Grievance and Appeals Section. *Id.* at ¶ FF.

### 3. Discussion

Defendants contend that plaintiff failed to exhaust any grievances with respect to his claims that defendants Sperling and Bean failed to treat his wrist after the December 11, 2018 injury. In this regard, defendant Sperling states:

> Plaintiff's Certified Copy of Plaintiff's Grievance History Report demonstrates that he failed to exhaust any grievance related to the alleged incident in question. This reflects that Mr. LaPine submitted two grievances on December

5

> 11, 2018, but MDOC rejected both of them for failure to follow the proper procedure rather than responding to them on the merits. (Exhibit A). Indeed, Plaintiff filed his Complaint only 20 days after the alleged incident involving P.A. Sperling. Accordingly, Plaintiff failed to properly exhaust the administrative remedies available to him; and for this reason, P.A. Sperling is entitled to summary judgment. *Woodford v. Ngo* at 2386; *Jones v. Bock* at 923.

Defendant Sperling's Brief (ECF No. 26, PageID.167) (emphasis omitted). Defendant Bean adopted the arguments advanced by defendant Sperling. Defendant Bean's Brief (ECF No. 37, PageID.291-292).

As an initial matter, Sperling does not elaborate on his suggestion that plaintiff may have submitted two grievances related to his claim on December 11, 2018. Sperling did not provide the Court with copies of the grievances; he simply cited a 66-page exhibit. Presumably, Sperling is referring to two Step III appeals filed on December11, 2018. However, those appeals related to previous matters grieved on October 16, 2018 at a different correctional facility (MCF). *See* MDOC Step III Grievance Report (ECF No. 26-1, PageID.169).

This apparent misreading of the grievance record aside, plaintiff does not claim that he filed any grievances with respect to his claims against defendants Sperling and Bean. Rather, plaintiff stated that he did not need to file grievances because he was on modified access (for filing an excessive number of grievances) and that no administrative remedies were available for him to exhaust because the grievance coordinator would not allow him to file grievances. Plaintiff's Response (ECF No. 29).

Defendant Sperling points out that MDOC Policy Directive 03.02.130 ¶KK sets out the procedure by which prisoners on modified access file grievances:

> While on modified access, the prisoner or parolee shall be able to obtain grievance forms only through the Step I Grievance Coordinator. A grievance form shall be provided if the Step I Grievance Coordinator determines that the issue the

6

> prisoner or parolee wishes to grieve is grievable and otherwise meets the criteria outlined in this policy. The Grievance Coordinator shall maintain a record of requests received for grievance forms and whether the request was approved or denied and, if denied, the reason for the denial. If a prisoner or parolee on modified access attempts to file a grievance using a form not provided by the Grievance Coordinator, the Grievance Coordinator may reject the grievance in accordance with Paragraph G. The Warden, FOA Area Manager, or Manager of the Grievance and Appeals Section may extend the prisoner's or parolee's modified access status for not more than an additional 30 days for each violation. Notification of such extensions shall be consistent with the requirements set forth in Paragraphs II and JJ.

Defendant Sperling's Reply (ECF No. 40, PageID.296-297).

The issue before the Court is whether plaintiff has presented evidence to demonstrate that he complied with ¶ KK or that he was prevented from using that procedure. *See Walker v. Michigan Department of Corrections*, 128 Fed. Appx. 441, 446 (6th Cir. 2005) ("if a grievance officer dismissed a non-frivolous complaint by [a prisoner on modified access], that would be the end of possible administrative remedies with regard to that grievance, and a court would thus have jurisdiction to hear a related federal claim, since all possible administrative remedies would have been attempted").

Here, plaintiff filed an "affidavit" before defendants moved for summary judgment. LaPine First Aff. (ECF No. 21). In this affidavit, plaintiff stated that he requested to file grievances at DRF, but G/C (grievance coordinator) Becher "refused to respond to my numerous requests to file a grievance & obtaining a grievance form" and that "[t]he grievance process was made unavailable to me and I therefore had no remedy available to exhaust." LaPine First Aff. Plaintiff filed another "affidavit" after defendants moved for summary judgment, stating that "I was prevented from filing any grievances while on modified access." LaPine Second Aff. (ECF No. 30). The latter affidavit included statements that "[w]hile at DRF, I requesting [sic] in writing

7

for grievances to be filed to G/C Becher was denied, never receiving a response, in 2018 and 2019," and hearsay, "Mr. Erickson told me G/C Becher said I would get no grievances. This included grievances on PA Sperling and RN Bean, while on modified access." *Id*.   No doubt the purpose of plaintiffs' "affidavits" is to identify genuine issues of material fact to avoid summary judgment for lack of exhaustion.

However, plaintiff's two "affidavits" are not adequate to avoid summary judgment because: they are not affidavits (*i.e.*, neither is notarized); they are not unsworn declarations pursuant to 28 U.S.C. § 1746;[2] they are based on information and/or belief;[3] and the second affidavit contains hearsay.[4] Based on this record, plaintiff failed to properly exhaust his claims against defendants Sperling and Bean. *See Jones*, 549 U.S. at 218-19; *Woodford*, 548 U.S. at 90-93. Accordingly, defendants' motions for summary judgment should be granted.

---

[2] To qualify as an unsworn declaration under that statute, a statement must be made in substantially the following form "I declare (or certify, verify, or state) under penalty of perjury that the foregoing is true and correct. Executed on (date). (Signature)". 28 U.S.C. § 1746(2). Here, plaintiff's statements did not comply with the statute because he did not verify that the statements were "true and correct." Rather, plaintiff diluted that statutory language in the first affidavit by stating that the statements were true "based upon personal knowledge *and information*," and diluted the language in the second affidavit by referring to the statements as "true based upon personal *information, knowledge and belief*." Lapine First Aff. and Second Aff.   (ECF Nos. 21 and 30).

[3] A party's statement made "to the best of my knowledge, information and belief" does not demonstrate personal knowledge and cannot create genuine issues of fact for purposes of a summary judgment motion.   *Kiplinger v. Selene Finance, LP*, No. 1:15-cv-105, 2015 WL 9255564 at *3 (W.D. Mich. Dec. 18, 2015). *See Alpert v. United States*, 481 F.3d 404, 409 (6th Cir. 2007) (holding that the affiant's "statement . . . based upon his 'belief'. . . did not demonstrate the personal knowledge required by Fed. R. Civ. P. 56(e)"); *Pace v. Capobianco*, 283 F.3d 1275, 1278 (11th Cir. 2002) (the "personal knowledge requirement [of Rule 56] prevents statements in affidavits that are based, in part, 'upon information and belief' – instead of only knowledge – from raising genuine issues of fact sufficient to defeat summary judgment"); *Dellacava v. Painters Pension Fund of Westchester and Putnam Counties*, 851 F.2d 22, 27 (2d Cir. 1988) (statements in an affidavit made "upon information and belief" have "no probative value and may not be considered in a motion for summary judgment").

[4] *See Tinsley v. General Motors Corporation*, 227 F.3d 700, 703 (6th Cir. 2000) ("hearsay evidence cannot be considered by a trial court ruling on a motion for summary judgment").

### III.     Recommendation

For the reasons set forth above, I respectfully recommend that the motions for summary judgment filed by defendants Sperling (ECF No. 26) and Bean (ECF No. 37) be **GRANTED** and that this matter be **DISMISSED**.


Dated:  February 19, 2020                               /s/ Ray Kent
                                                                                               United States Magistrate Judge


**ANY OBJECTIONS** to this Report and Recommendation must be served and filed with the Clerk of the Court within fourteen (14) days after service of the report.   All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b).   Failure to serve and file written objections within the specified time waives the right to appeal the District Court's order.   *Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).