UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DARRIN LAPINE,

    Plaintiff,

v.

RANDEE REWERTS, *et al.*,

    Defendants.

_____/

Case No. 1:18-cv-1447

Hon. Gordon J. Quist

**REPORT AND RECOMMENDATION**

This is a *pro se* civil rights action brought pursuant to 42 U.S.C. § 1983 by plaintiff Darrin LaPine ("LaPine"), a former state prisoner at a Michigan Department of Corrections (MDOC) facility. This matter is now before the Court on motions for summary judgment filed by defendants Physician Assistant (PA) Kyle Sperling (ECF No. 86) and RN Jeanne Bean (ECF No. 89).

**I.    Background**

LaPine's complaint involves incidents which occurred at the Carson City Correctional Facility (DRF). The Court previously summarized his claims as follows:

> Plaintiff identifies two medical needs to which the Defendants were deliberately indifferent. Defendants McIntyre and Sperling insisted on providing Cymbalta to Plaintiff despite the fact that it was ineffective in treating Plaintiff's pain and caused adverse side effects. Defendants Sperling, Smith, Nelson, Verschure, Braman, Unknown Transportation Corrections Officer, Peeters, Loganathan, Bean, Stephan, and Sparks were deliberately indifferent to the serious medical need related to Plaintiff's right wrist.
>
> On December 11, 2018, Plaintiff's wrist slammed into a door frame. Plaintiff heard a crack and felt immediate and severe pain. His hand and wrist

1

swelled to twice their normal size. Plaintiff showed his wrist to Corrections Officer Smith, Nurse Nelson, and Nurse Verschure. He was instructed to wait in the waiting area. Eventually Smith told Plaintiff to prepare a kite so he could receive treatment. Plaintiff said he could not. He was told to go back to his unit.

Once in his unit, Plaintiff was told to report to the control center for an offsite medical appointment. He was told he would see a back surgeon. Before Plaintiff left, Defendant Sperling looked at Plaintiff's wrist, acknowledged it looked broken, but offered no treatment. Plaintiff complained to the transporting officers, Braman and the unknown officer, about his wrist, particularly because the handcuffs were causing Plaintiff pain. The transportation officers said they did not work in medical.

Plaintiff was transported to Henry Ford Allegiance Hospital, the neurosurgery department. Plaintiff was examined by Physician Assistant Peeters and Doctor Loganathan. Both acknowledged that Plaintiff's wrist required immediate attention. Neither provided any treatment. When Plaintiff raised the issue with the transportation officers again, they replied that they only provided transport, not medical treatment.

Upon Plaintiff's return to DRF, he was examined by Nurse Bean. She refused to provide any treatment. The next day, Plaintiff told Defendant Fidler and Defendant Psychologist Stephan about his wrist. Psychologist Stephan indicated that she would make sure Plaintiff received medical attention. A medical appointment for Plaintiff's hand was scheduled on December 14. Defendant Nurse Sparks cancelled that appointment.

On December 17, Plaintiff was seen by Dr. Holmes. Dr. Holmes ordered x-rays. Nurse Verschure ordered ace wraps and a splint. The x-rays were taken on December 18. Nonetheless, Defendant Sperling cancelled Plaintiff's appointment. On December 19, Plaintiff was seen for his wrist pain as an emergency patient.

Opinion (ECF No. 10, PageID.108-110).

The Court dismissed the majority of LaPine's claims on initial screening.[1]  *See id.*

(PageID.116); Order (ECF No. 11) (dismissing defendants Rewerts, Freed, Rohrig, Becher, and

---

[1] In screening the complaint, the Court observed that "[p]laintiff has filed many lawsuits in this district," and that while he is subject to the three-strikes rule for filing complaints that were frivolous, malicious, or failed to state claim, he suffers from chronic health problems with his back and right wrist, and "[i]n several lawsuits, including this one, Plaintiff has offered one or both of those problems as the source of imminent danger of serious physical injury that permits him to proceed *in forma pauperis* despite his three strikes."  Opinion (ECF No. 10, PageID.106).

2

Loomis as improperly joined in the lawsuit); Opinion (ECF No. 12, PageID.129); Order (ECF No. 13) (dismissing defendants McIntyre, Smith, Nelson, Verschure, Braman, Unknown Party, Peeters, Loganathan, Fidler, Stephan and Sparks, and plaintiff's claim regarding his prescription for Cymbalta for failure to state a claim upon which relief can be granted).

LaPine's only remaining claims are that PA Kyle Sperling and RN Jeanne Bean violated his Eighth Amendment rights when they failed to treat his wrist injury in December 2018. Opinion (ECF No. 12, PageID.129).   In Count 4, LaPine alleged that PA Sperling,

> [w]as deliberately indifferent to Plaintiff's medical needs on 12/11/18 where he refused to provide Plaintiff medical attention for his obviously fracture [sic] severely injured right hand/wrist, that any lay person would know needed immediate treatment and neglected to fulfill his duty owed to Plaintiff.  . . .

Compl. (ECF No. 1, PageID.12).   In Count 5, LaPine alleged that PA Sperling and RN Bean,

> were all deliberately indifferent to Plaintiff's medical needs to immediate medical attention where on 12/11/18 and thereafter refused/failed to provide or have provided to Plaintiff necessary medical treatment for a [sic] obvious serious medical need for his right hand/wrist, and thereby unnecessarily and unreasonably delayed treatment that any lay person would know needed immediate medical attention and violated Plaintiff's constitutional provisions.  . . .

*Id*. at PageID.12-13.[2]

---

[2] The Court notes that LaPine concluded Counts 4 and 5 with the sentence, "As well as violated his state law rights." Compl. at PageID.12-13.  *Id*.  The Court did not recognize these cryptic sentences regarding "state law rights" as alleging separate causes of action under state law.  *See* Opinion (ECF No. 12).  Such vague references do not state plausible claims for relief.  *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (a complaint based upon "an unadorned, the - defendant - unlawfully - harmed - me accusation" is insufficient to state a claim for relief).

## II. Defendants' motions for summary judgment

### A. Legal standard for summary judgment

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Rule 56 further provides that a party asserting that a fact cannot be or is genuinely disputed must support the assertion by:

> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
>
> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1).

In *Copeland v. Machulis*, 57 F.3d 476 (6th Cir. 1995), the court set forth the parties' burden of proof in a motion for summary judgment:

> The moving party bears the initial burden of establishing an absence of evidence to support the nonmoving party's case. Once the moving party has met its burden of production, the nonmoving party cannot rest on its pleadings, but must present significant probative evidence in support of the complaint to defeat the motion for summary judgment. The mere existence of a scintilla of evidence to support plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff.

*Copeland*, 57 F.3d at 478-79 (citations omitted). "In deciding a motion for summary judgment, the court views the factual evidence and draws all reasonable inferences in favor of the nonmoving party." *McLean v. 988011 Ontario Ltd.*, 224 F.3d 797, 800 (6th Cir. 2000). However, the Court is not bound to blindly adopt a non-moving party's version of the facts. "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable

jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007).

### B.   Eighth Amendment claims

### 1.   Legal Standard

LaPine seeks relief pursuant to 42 U.S.C. § 1983, which "provides a civil cause of action for individuals who are deprived of any rights, privileges, or immunities secured by the Constitution or federal laws by those acting under color of state law." *Smith v. City of Salem, Ohio*, 378 F.3d 566, 576 (6th Cir. 2004). To state a § 1983 claim, a plaintiff must allege two elements: (1) a deprivation of rights secured by the Constitution and laws of the United States, and (2) that the defendant deprived him of this federal right under color of law. *Jones v. Duncan*, 840 F.2d 359, 360-61 (6th Cir. 1988); 42 U.S.C. § 1983.

It is well established that an inmate has a cause of action under § l983 against prison officials for "deliberate indifference" to his serious medical needs, since the same constitutes cruel and unusual punishment proscribed by the Eighth Amendment. *Estelle v. Gamble*, 429 U.S. 97 (l976). A viable Eighth Amendment claim consists of an objective and a subjective component. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). A court considering such a claim must ask both if the alleged wrongdoing was objectively harmful enough to establish a constitutional violation and if the officials acted with a sufficiently culpable state of mind. *Hudson v. McMillian*, 503 U.S. 1, 8 (1992).

The objective component requires the infliction of serious pain or failure to treat a serious medical condition. *Id*. at 8-9. "Because society does not expect that prisoners will have

unqualified access to health care, deliberate indifference to medical needs amounts to an Eighth Amendment violation only if those needs are 'serious.'" *Id*. at 9.

The subjective component requires that the defendant act with deliberate indifference to an inmate's health or safety. *See Wilson v. Seiter*, 501 U.S. 294, 302-03 (1991). To establish the subjective component, the plaintiff must show that "the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 837. Mere negligence in diagnosing or treating a medical condition does not constitute an 8th Amendment violation. *Id*. at 835. "It is obduracy and wantonness, not inadvertence or error in good faith, that characterize the conduct prohibited by the Cruel and Unusual Punishments Clause." *Whitley v. Albers*, 475 U.S. 312, 319 (1986). Stated another way, the plaintiff must prove that each defendant acted with a "sufficiently culpable state of mind, equivalent to criminal recklessness." *Santiago v. Ringle*, 734 F.3d 585, 591 (6th Cir. 2013) (citing *Farmer*, 511 U.S. at 834, 839-40) (internal quotation marks omitted).

2. **Discussion**

a. **PA Sperling**

As discussed, LaPine alleged that he injured his wrist on December 11, 2018. While LaPine was waiting to be transported off-site to see Dr. Longathan for an evaluation of a different medical condition,

> Just then PA Sperling entered the control center. Plaintiff showed him his hand/wrist and stated he was in excruciating pain and [couldn't] stand it anymore. Mr. Sperling stated, "looks like it's broke and it's really swollen I'll bet it does really hurt." Plaintiff asked if he was going to receive any emergency treatment. PA Sperling ignored Plaintiff and walked out stating nothing.

6

*Id*. at PageID.7.

LaPine also alleged that,

> On 12/18/18 x-rays were taken. Then a PA appointment with PA Sperling was cancelled by PA Sperling.

*Id*. at PageID.10.

In his affidavit, PA Sperling stated in pertinent part as follows:

> 2. I was a medical provider at the Carson City Correctional Facility during the time period relevant to this case.
>
> 3. I do not have an independent recollection of Darrin LaPine.
>
> 4. In order to get inside or outside of Carson City Correctional Facility, you must pass through the control center.
>
> 5. Inmates are temporarily stationed at the control center for several reasons, including offsite visits. Inmates will often try to get the attention of a medical provider while they are passing through the control center.
>
> 6. I do not give patients medical advice in the control center. If an inmate attempts to speak to me about medical issues, my custom, habit, and practice is to tell them I will see them at their next visit or to submit a kite so that an appointment can be scheduled.
>
> 7. I did not cancel any of Mr. LaPine's appointments. If I had, it would have documented it in the medical records, along with the reason the appointment was cancelled.
>
> 8. My involvement with Mr. LaPine's care as it relates to the allegations in his Complaint is limited to the issues set forth in this affidavit. The matters stated in this Affidavit are based on my personal knowledge and review of his Michigan Department of Corrections medical records during the relevant time period.

Sperling Aff. (ECF No. 86-2, PageID.501-502).

In this instance, P.A. Sperling did not act with deliberate indifference to LaPine's serious medical needs in violation of the Eighth Amendment. Medical providers cannot be expected to be on-call to address all prisoner medical questions when they are walking past a

prisoner. Here, even if PA Sperling had made the alleged statements while moving through the control center, Lapine's swollen wrist was not a medical emergency which required immediate attention outside of the normal procedure for seeking medical treatment at the correctional facility.

Next, while Lapine alleged that sometime after December 18, 2018 "a PA appointment with PA Sperling was cancelled by PA Sperling," he does not include this claim in either Count 4 or Count 5. LaPine's vague statement does not identify the date of, or reason for, any such appointment. There is no record that such an appointment was made or cancelled.

In his response/affidavit/declaration, LaPine quotes a number of statements purportedly made by non-party Dr. Holmes regarding PA Sperling's refusal to provide treatment, Sperling's cancellation of an appointment, and RN Bean's refusal to provide treatment. *See* LaPine Response (ECF No. 96). Dr. Holmes' statements are hearsay, which is defined as "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter." Fed. R. Evid. 801(c). LaPine cannot rely on this statement to create a factual issue regarding his claims against PA Sperling or RN Bean. *See, e.g., Alpert v. United States*, 481 F.3d 404, 409 (6th Cir. 2007) ("[E]vidence submitted in opposition to a motion for summary judgment must be admissible. Hearsay evidence . . . must be disregarded"); *Dawson v. Norwood*, No. 1:06-cv-914, 2011 WL 2667962 at *3 (W.D. Mich. July 5, 2011) ("Because these statements offered in the affidavits are hearsay, they are not properly considered in the motion for summary judgment.").

Furthermore, the record reflects that after refusing treatment from Nurse Nelson on December 11, 2018, LaPine eventually sought treatment, which included an x-ray of his hand. *See*, *infra*. LaPine has presented no evidence to demonstrate that he suffered a detrimental effect

from the alleged delay in treatment. "[A]n inmate who complains that delay in medical treatment rose to a constitutional violation must place verifying medical evidence in the record to establish the detrimental effect of the delay in medical treatment to succeed." *Napier v. Madison County*, 238 F.3d 739, 742 (6th Cir. 2001). For all of these reasons, PA Sperling's motion for summary judgment should be granted.

### b.     RN Bean

When LaPine returned to DRF from the off-site appointment with Dr. Loganathan on December 11, 2018, RN Bean saw him for a follow-up to the appointment. *See* Medical Records (ECF No. 92, PageID.622-623). The history of plaintiff's present illness was "PostER / Inpatient / Specialist Follow Up" at 6:45 p.m. *Id*. at PageID.623. RN Bean reviewed the recommendations from the specialist as follows:

> Recommend L2-L5 decompression and fusion. Stop Cymbalta. Get cervical MRI for upper extremity symptoms. Recommend neurontin 100mg TID. Methocarbamol PRN.

*Id*. at PageID.622. The DRF treatment plan stated that the medical provider (MP) "already scheduled for 12/17/18 to review recommendations and consult with pt." *Id*. At that time, RN Bean was not involved with treating LaPine's wrist injury, and there is no record that he asked for medical treatment of that injury. *Id*. at PageID.622-623.

In her affidavit, RN Bean stated that,

> At no time during Mr. LaPine's appointment on December 11, 2018, was I aware that Mr. LaPine's hand was hurting him or that he suffered from a hand injury that required any treatment. I did not notice any gross deformity, swelling, or discoloration of Mr. LaPine's right hand that would indicate that Mr. LaPine needed treatment.

Bean Aff. (ECF No. 97, PageID.638-639).

The record includes LaPine's kite sent to RN Silvernail on December 15, 2018. This kite makes no reference to seeking treatment from RN Bean.  In that kite, LaPine stated in pertinent part:

> Wants to know when the neurologist recommendations are going to happen and is claiming deliberate indifference as he had injured his hand and says the [sic] he notified transportation c/o's and the nurse that drew his labs.

Medical Record (ECF No. 92, PageID.620).   With respect to "the nurse that drew his labs" on the morning of December 11, 2018, that nurse was not RN Bean.   Rather, the nurse was RN Nelson, who noted that LaPine refused treatment at that time:

> To healthcare for lab draw. C/O shutting right hand in door on way to healthcare. Middle to lateral right hand swollen. Slightly bruised along lateral knuckle and hand. Had inmate go eat and return after. Given kite to fill out once returning and refused to fill out and refusing treatment.

*Id.* at PageID.625.

On December 12, 2018, a sergeant from 800 unit spoke with RN Verschure stating that LaPine's wrist looked swollen.   *Id.* at PageID.621. RN Verschure called the 800 unit to discuss the wrist and for plaintiff to contact health care when he arrived back at the unit.   *Id.*

Plaintiff saw a medical provider, Dr. Scott Holmes, on December 17, 2018.   At that time the doctor ordered an x-ray of the hand based upon an injury reportedly from December 11, 2018.   *Id.* at PageID.617-619. In this regard, the medical record states that LaPine reported that, "R hand 'got slammed in the door  . . .   sure it's broke, sure feels like it.' [I]njury happened 12/11/18."   *Id.* at PageID.617.

RN Bean saw plaintiff two days later, on December 19, 2018.   At that time, LaPine had a swollen right hand. RN Bean noted,

10

> [R]ecent x-rays reveal hand fracture, consult completed for offsite evaluation, obvious deformity to pinky and swelling to thumb base and wrist area. Cap refill <3 seconds. Reports he has been elevating, taking Tylenol, not wearing splint upon arrival[.]

*Id*. at PageID.607.    RN Bean ordered medical equipment, *i.e.*, ice three times daily with meals.

*Id*. at PageID.608.

    In his response/affidavit/declaration, LaPine stated in pertinent part:

> RN Bean refused to provide treatment when it was her duty owed to Plaintiff to do so, by MDOC policy as well as constitutional requirements. RN Bean had no excuse not to provide treatment, to call a provider and request off site x-rays, a splint or some other treatment for the excruciating pain Plaintiff was made to endure.

LaPine Response (ECF No. 96, PageID.632-633) (emphasis omitted).    LaPine's vague statement regarding RN Bean does not rebut Bean's affidavit or address the medical records generated between December 11 and December 19, 2018.    LaPine has failed to demonstrate that a genuine issue of material fact exists with respect to his claim that RN Bean was deliberately indifferent to his serious medical need related to his wrist.    Accordingly, RN Bean's motion for summary judgment should be granted.

### III.    Recommendation

    For the reasons set forth above, I respectfully recommend that the motions for summary judgment filed by defendants Sperling (ECF No. 86) and Bean (ECF No. 89) be **GRANTED** and that this matter be **DISMISSED**.


Dated:  June 27, 2022                        /s/ Ray Kent
                                                           RAY KENT
                                                           United States Magistrate Judge

**ANY OBJECTIONS** to this Report and Recommendation must be served and filed with the Clerk of the Court within fourteen (14) days after service of the report.  All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b).  Failure to serve and file written objections within the specified time waives the right to appeal the District Court's order.  *Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).